Hello? Hello? Yes, we are still here. We will hear from Mr. Taylor. Mr. Taylor, are you on the line? Yes, I am. Thank you very much. I may have to leave the court. Just a few quick points in rebuttal. First, on this argument about British Airways making a factual challenge and why didn't we put in call records. Well, the short answer is that we didn't need to. British Airways did not proffer any evidence that tends to disprove the plaintiff's case for standing. The district court did not make any jurisdictional fact findings, and the case for standing here does not rely on any inferences, but on the plaintiff's own account of what happened, which is plainly plausible. So we were under no obligation to do anything more. And what British Airways is essentially suggesting is that it doesn't believe Pena. In other words, it's attacking its credibility. British Airways will, of course, get to do that down the road, but this is neither the time nor the place. And in any event, none of this matters because British Airways does not deny that the credit cards don't cancel themselves. You have to spend time and effort to fix the problem. Nor is it denied that there were over half a dozen published circuit court decisions that hold that lost time is an injury, including Judge Easterbrook's decision in Diesenbach, which addresses this point about lost time being an economic injury. And nor finally does British Airways deny that a breach of contract would have sufficed to support suit at the founding, regardless of whether any further harm were alleged or could be proved, and that, too, is fatal to its case for standing. Now, number two on the merits, a few things here. The two most noteworthy things here are that British Airways does not deny that its website terms and conditions are a contract. Now, we deal with this at pages 11 and 12 of our reply. They're trying to make the point that they're not technically incorporated into the contract of carriage. But, you know, that is, first of all, a factual question, but second of all, really beside the point, because a consumer cannot use British Airways' website without agreeing to these terms and conditions, and I'd be really surprised to hear British Airways take the position that its own terms and conditions, which give it the right to use the information in the first place, have no contractual basis. I guess I have two questions about that. So if you're saying that it becomes a contract just by somebody using the website, if they went to the privacy policy on the website, it would tell them that the privacy policy is not contractual and is not part of your contract with us. So why wouldn't that be dispositors? Well, I think it's trumped by the contractual provision in what is indisputably the contract that references the privacy policy and makes the clear contractual promise. So because the terms and conditions reference it, it becomes contractual, but not because he purchased the ticket. You're saying just because he used the website. Well, I mean, you can see this at page 12 of our reply, and I think it's just necessarily the case that using the website and making this purchase triggers this agreement to this contractual terms and conditions. Okay. Can I ask, so even if it is contractual, what is the provision of the privacy policy that you say is breached here? So looking at this, the thing about security seems to be the sentence at the beginning that says, we will put in place measures to protect your information and keep it secure. Is that the part of the privacy policy that you say is breached, that sentence? It's that sentence and then the sentence that says, we take great care to protect the personal information you provide to us. I think those two taken together and then in context with some of the other statements that maybe if they were made on their own would not give rise to a definitive promise. I mean, the sentence that says, we'll take care and we'll put in place measures, I mean, you don't deny that they put in place measures. Maybe they weren't sufficient measures, but the fact that somebody had to hack into the system means that there was some measure they had to get around, right? So wouldn't you have to show more to say that they, wouldn't you have to show they didn't put in place any measures at all in order to show that there's a breach of this sentence? A couple of points in response there. One is that they actually, what's telling is they don't offer an interpretation of their own of what this language means, and I think what you're putting your finger on is that there might be some ambiguity here. Now, ambiguity in the contract is not the same as the contract being indefinite, and typically ambiguity is construed against the drafter and certainly cannot be resolved as a threshold of a case. Now, maybe one reading of this is that it literally just means put in place some measures, no matter how porous, even if it's below industry standards, to protect your information, or maybe, particularly in context, a reasonable person would look at this and think that what it's really saying is that we're going to put in place some reasonable measures that at least hit the industry standard for data protection to protect your information and keep it secure. And I think that to the extent that there's ambiguity here, that ambiguity would cancel against dismissal, not in favor of it. And I think the Farrow case, which we cite in our reply brief at 10, provides a good example of how statements such as these are sufficiently definite to allow a case to make out a plausible breach of contract claim based on violation of the privacy policy. If there are no further questions, thank you very much. Thank you both. Very nicely argued. Let me just raise one additional point. The CAFA claim, CAFA argument in our jurisdiction under CAFA, is raised for the first time in this oral argument, so I'd like to ask the parties to address it. If you could provide us with letter briefs, no more than eight pages, single space, and you can do them simultaneously and provide them within two weeks of today, just addressing our jurisdiction under the Class Action Fairness Act. Is that clear to both sides? Thank you, Your Honor. Yes, it's clear. Thank you very much. Nicely argued.